## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**TRASCO WELLNESS, LLC** d/b/a
**TAMPA BAY SPINE AND SPORT**,
a Florida Limited Liability Company,

Plaintiff,                                    CASE NO. 8:23-cv-02536-WFJ-LSG

v.

**TAMPA BAY SPINE & SPORTS
MEDICINE, LLC**, a Florida
Limited Liability Company,
**TAMPA BAY SPINE AND SPORT, LLC**,
a Florida Limited Liability Company, and
**ERIC J. NYE**, an individual,

Defendants.

_____/

## <u>ORDER</u>

Before the Court are the parties' cross-motions for summary judgment. Plaintiff Trasco Wellness d/b/a Tampa Bay Spine and Sport ("Trasco" or "Plaintiff") moves for summary judgment on all counts in its Third Amended Complaint. Dkt. 74. Defendants Tampa Bay Spine & Sports Medicine, LLC ("TBSSM") and Dr. Eric J. Nye ("Dr. Nye") (collectively, "Defendants") have responded in opposition, Dkt. 95, and Plaintiff Trasco replied, Dkt. 98. Defendants TBSSM and Dr. Nye also move for summary judgment on all counts, Dkt. 81, Plaintiff Trasco responded in opposition, Dkt. 93, and Defendants replied, Dkt. 99. Upon careful review, the Court

grants Plaintiff's motion for summary judgment and denies Defendants' motion for summary judgment.

## BACKGROUND

This case revolves around alleged trademark infringement on the following names: "TAMPA BAY SPINE AND SPORT" and "TAMPA BAY SPINE & SPORTS MEDICINE." Dkt. 80 ¶ 2; Dkt. 92 ¶ 2. Plaintiff Trasco's business name is "TAMPA BAY SPINE AND SPORT," and Defendants TBSSM and Dr. Nye's federally registered trademark is "TAMPA BAY SPINE & SPORTS MEDICINE." *Id.* The parties agree that each one incorporates its marks into logos in dissimilar ways using distinct styles and color schemes. Dkt. 76 ¶ 38; *see also* Dkts. 78-4, 78-5.

| Plaintiff Trasco | Defendants TBSSM and Dr. Nye |
|---|---|
|  |  |





Dkts. 78-4, 78-5.

Importantly, TBSSM only has a Federal Trademark Registration on the Supplemental Register for the "TAMPA BAY SPINE & SPORTS MEDICINE" mark (Ser. No. 98185607) (Reg. No. 7430833) with a first-use date of August 26, 2019, which Dr. Nye applied for on September 18, 2023, and subsequently was registered on June 25, 2024. Dkt. 74-2; Dkt. 43-9. TBSSM also owns a Florida trademark for "TAMPA BAY SPINE & SPORTS MEDICINE" (Reg. No. T23000001024) with a first-use date of August 27, 2019, which was registered on November 13, 2023. Dkt. 80 ¶ 8; Dkt. 82-2. Dr. Scott Elliot (owner of Trasco Wellness, LLC) attempted to register "TAMPA BAY SPINE AND SPORT" with the United States Patent and Trademark Office ("PTO") on September 19, 2023, after consultation with an attorney. Dkt. 80 ¶ 26. Dr. Elliot abandoned the application, and no subsequent application has been filed. *Id.* ¶ 27.

3

Trasco filed its fictitious name for "TAMPA BAY SPINE AND SPORT" on October 11, 2022. *Id.* ¶ 13; Dkt. 43-3. Trasco is a medical office that offers chiropractic services, physiotherapy, interventional pain management, spine surgery, orthopedic surgery for extremities, sports medicine, and PTSD counseling for individuals suffering from injury-related trauma. Dkt. 76 ¶ 7. Trasco operated under the name "TAMPA BAY SPINE AND INJURY" from July 2016 to January 2023. *Id.* ¶ 11. Trasco changed its name to "TAMPA BAY SPINE AND SPORT" on or about March 1, 2023. *Id.* ¶ 12. At the time of the name change, Trasco operated locations in Brandon, Florida, and St. Petersburg, Florida, under the name "TAMPA BAY SPINE AND SPORT." *Id.* ¶ 14. After conducting the name search[1] and effectuating the name change, Trasco opened a location in Palm Harbor, Florida, under the name "TAMPA BAY SPINE AND SPORT" in September 2023. *Id.* ¶ 16. Trasco currently operates five locations in the greater Tampa Bay area: Brandon, Tampa, Palm Harbor, St. Petersburg, and Sarasota. *Id.* ¶ 17. Trasco changed its name to "TAMPA BAY SPINE AND SPORT" because they wanted a name that "was descriptive in nature of our location and what we do." Dkt. 80 ¶ 11. Trasco's changed name is "very descriptive" of their services since orthopedic doctors are employees.

---

[1] Before Plaintiff's name change, "Trasco conducted searches of the Florida Agency for Health Care Administration and the Florida Division of Corporations records on Sunbiz, but Trasco did not see TBSSM listed on either database or was not looking for it." Dkt. 80 ¶ 25.

*Id.* ¶ 12. Trasco markets and advertises its services through sponsorships of golf tournaments and high school sporting events. *Id.* ¶ 40.

Incorporated as "TAMPA BAY SPINE & SPORTS MEDICINE" on August 27, 2019, TBSSM is a medical office that offers chiropractic services, sports medicine, physical therapy, hormone therapy, joint injections, interventional pain management, vitamin injections, Botox, and personal injury services in the Tampa Bay area. Dkt. 76 ¶¶ 8, 9; Dkt. 80 ¶ 16. Dr. Nye is the president of TBSSM, a chiropractor, and a company employee. Dkt. 76 ¶ 10; Dkt. 80 ¶ 14. TBSSM has only one location at 32815 U.S. Highway 19 North, Suite 200, Palm Harbor, Florida.[2] Dkt. 80 ¶ 24. TBSSM's mark is displayed on its two entrance doors, under which is a sign that reads "Eric J. Nye, D.C., P.A." *Id.* ¶ 9; Dkt. 82-8. Dr. Nye included the word "medicine" in the TBSSM business name and trademark to describe the physical treatments and prescribed medications offered to patients by TBSSM. Dkt. 82 ¶ 15. As part of its marketing and advertising efforts, TBSSM sponsors professional-level athletic competitions, such as those organized by the United States Powerlifting Association ("USPA"), and participates in networking groups like Business Network International ("BNI"). Dkt. 80 ¶ 41.

---

[2] Trasco's Palm Harbor location at 2595 Tampa Road, Unit H, is less than one mile from TBSSM's Palm Harbor location at 32815 U.S. Highway 19 North, Suite 200. Dkt. 80 ¶ 24.

On September 14, 2023, Dr. Nye filed for fictitious name registrations for "TAMPA BAY SPINE & SPORT" and "TAMPA BAY SPINE AND SPORT" even though Defendants do not and have not ever operated under those names. Dkt. 76 ¶ 18. The next day, on September 15, 2023, TBSSM sent Trasco a cease-and-desist letter claiming trademark infringement and demanding that Trasco immediately cease use of the name "TAMPA BAY SPINE AND SPORT." *Id.* ¶ 19. On September 17, 2023, Dr. Nye filed Articles of Incorporation with the State of Florida, Division of Corporations, for "TAMPA BAY SPINE AND SPORT, LLC" with his name and address listed. *Id.* ¶ 20. On November 3, 2023, Trasco responded to Defendants' cease-and-desist letter, arguing against confusion due to extensive third-party use and the crowded field of similar marks. *Id.* ¶ 21.

The record also contains over 900 pages of subpoenas and attached documents that TBSSM argues were intended for Trasco but were incorrectly served or delivered in person or by facsimile to TBSSM. Dkt. 80 ¶ 31. These various subpoenas are addressed to "TAMPA BAY SPINE & SPORTS MEDICINE" and "TAMPA BAY SPINE AND SPORT." *Id.*; *see e.g.*, Dkts. 82-3, 82-4, 82-5, 82-6, 82-7. Trasco admits that some subpoenas intended for Trasco were incorrectly sent to TBSSM, but argues that at least some of the subpoenas are related to Dr. Nye's "fraudulent filings." Dkt. 92 ¶ 31. Additionally, due to both parties having Palm Harbor locations within a mile of each other, there have been instances where

patients of TBSSM have incorrectly visited Trasco's Palm Harbor location, and a few occurrences where patients of Trasco have mistakenly visited TBSSM's office. Dkt. 80 ¶¶ 34, 35; Dkt. 92 ¶¶ 34, 35.

On September 27, 2024, Plaintiff filed its Third Amended Complaint, alleging causes of action against Defendants for Declaratory Judgment of Non-infringement under §§ 32(a), 43(a) of the Lanham Act (15 U.S.C. §§ 1114, 1125) (Count I), Declaratory Judgment of No Unfair Competition under 15 U.S.C. § 1125(a) (Count II), Declaratory Judgment of Non-infringement under Florida Common Law (Count III), Declaratory Judgment of Invalidity based on Descriptiveness, Genericness, and Extensive Third-Party Use (Counts IV, V, and VI), and, in the alternative, Trademark Infringement Under 15 U.S.C. § 1125(a) (Count VII) and Trademark Infringement under Florida Common Law (Count VIII). Dkt. 43 ¶¶ 39–94. Plaintiff, however, has voluntarily dismissed its alternative claims for trademark infringement (Counts VII and VIII). *See* Dkt. 65.

Defendants had previously alleged several counterclaims when answering the Second Amended Complaint, but failed to reassert them in their Answer and Affirmative Defenses to the Third Amended Complaint. *Compare* Dkt. 37 *with* Dkt. 45. The Court previously found (and reiterates) that any counterclaims brought by Defendants have been abandoned. *See* Dkt. 73 at 3–4; Dkt. 89.

## LEGAL STANDARD

Summary judgment is only appropriate when there is "no genuine issue as to any material fact [such] that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed R. Civ. P. 56(a). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001) (noting a court must "review the facts and all reasonable inferences in the light most favorable to the non-moving party"). Once the moving party satisfies its initial burden, it shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e), (c). Speculation or conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). The court may not weigh evidence to resolve a factual

dispute; if a genuine issue of material fact is present, the court must deny summary judgment. *Hutcherson v. Progressive Corp.,* 984 F.2d 1152, 1155 (11th Cir. 1993). Likewise, the court should deny summary judgment if reasonable minds could differ on the inferences arising from undisputed facts. *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir. 1992).

This standard is especially important when there are cross-motions for summary judgment. "[C]ourts should be very careful in their analysis to ensure that the proper party receives the benefit of the summary judgment standard." *FCOA LLC v. Foremost Title & Escrow Servs. LLC*, 57 F.4th 939, 959 (11th Cir. 2023). "When parties jointly move for summary judgment, the court has three options: granting summary judgment for the plaintiff under the defendant's best case, granting summary judgment for the defendant under the plaintiff's best case, or denying both motions for summary judgment and proceeding to trial." *Id.*

Additionally, a district court is only required to consider "the cited materials" when deciding a summary judgment motion, Fed. R. Civ. P. 56(c)(3), and "[m]aking district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts. . . . [D]istrict court judges are not required to ferret out delectable facts buried in a massive record." *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011). "[T]here is no burden upon the district court to distill every potential argument that could be made based on the

9

materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (citing *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)).

## DISCUSSION

Defendants TBSSM and Dr. Nye move for summary judgment on Plaintiff Trasco's claims, arguing this Court should "recognize the validity of the registered trademark and grant summary judgment against Trasco in its claims for declaratory relief." Dkt. 81 at 16. Plaintiff opposes the motion, Dkt. 93, and moves for summary judgment against Defendants on all its declaratory judgment claims of non-infringement, no unfair competition, Florida common law, and invalidity, Dkt. 74.

The Court will begin with Plaintiff's motion for summary judgment, addressing its (Lanham Act) § 32(a) trademark non-infringement claim, codified at 15 U.S.C. § 1114(1), the § 43(a) no unfair competition claim, codified at 15 U.S.C. § 1125(a), and the declaratory judgment claims of invalidity, in Counts I, II, IV, V, and VI. Afterwards, the Court will then turn to the Florida common law claim in Count III since Florida "common law infringement and unfair competition claim[s] . . . rise or fall with its federal trademark infringement and unfair competition

claims." *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1267 (11th Cir. 2016) (citation omitted).

## I.    Plaintiff's Motion for Summary Judgment

### a.  Lanham Act Claims

As an initial matter, the Court makes a critical point regarding the types of Lanham Act claims alleged. First, while § 32(a) and § 43(a) are separate and distinct claims, the Court will consider them together. Under § 32(a), the Lanham Act provides for civil liability when "[a]ny person who shall, without the consent of the registrant—use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion[.]" § 32(1)(a), 15 U.S.C. § 1114(1)(a). For this type of claim, a party must first "show enforceable trademark rights in a mark or name. Second, it [must] prove that [the infringer] made unauthorized use of its marks such that consumers were likely to confuse the two." *Savannah Coll. of Art & Design, Inc. v. Sportswear, Inc.*, 872 F.3d 1256, 1261 (11th Cir. 2017) (citation modified) (citing *Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir. 1989)).

However, the Eleventh Circuit has noted that courts "often blur the lines between § 1114 claims and § 1125 claims [i.e., § 32(a) and § 43(a) claims under the

Lanham Act] because recovery under both generally turns on the [likelihood of]
confusion analysis." *Id.*; *see also Tana v. Dantanna's*, 611 F.3d 767, 773 n.5 (11th
Cir. 2010) (noting the district court's error in analyzing a trademark case under §
1114 rather than § 1125 was irrelevant "because the district court based its grant of
summary judgment on the likelihood-of-confusion prong"); *Tally-Ho, Inc. v. Coast
Cmty. Coll. Dist.*, 889 F.2d 1018, 1026 n.14 (11th Cir. 1989) ("an unfair competition
claim based only upon alleged trademark infringement is practically identical to an
infringement claim"). Indeed, there is an important difference between the two
claims: "§ 43(a), codified at 15 U.S.C. § 1125(a), protects against 'false designation
of origin,' which [courts] have referred to as 'a federal cause of action for unfair
competition.'" *Savannah*, 872 F.3d at 1261. As such, "[a] claim for infringement
under § 1114(1)(a) lies only for federally-registered marks, while a claim under §
1125(a) is broader and may also be based on unregistered (i.e., common-law)
marks." *Id.* (citations omitted); *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505
U.S. 763, 768 (1992) ("Section 43(a) . . . prohibits a broader range of practices than
does § 32, . . . which applies to registered marks.").

Thankfully, this distinction between federal and common law trademark
claims is irrelevant, as Plaintiff abandoned its Florida common law trademark
infringement claims in Count VIII. *See* Dkt. 65; *see also Savannah*, 872 F.3d at 1262
("Because [the plaintiff's] claims revolve around federally-registered marks, [the

common law trademark infringement test] cannot inform our analysis of the

infringement claim under § 1114, a provision which requires a federally-registered

mark, or under § 1125, a provision which can apply to a federally-registered mark.").

Accordingly, because the remaining (federal) counts only revolve around

TBSSM's federally registered mark, the Court needs to apply only one overall test

for all of Plaintiff's declaratory judgment claims under § 32(a) and § 43(a): "[the

party] seeking to prevail on a trademark infringement claim must show 1) that he

had a valid trademark and 2) that the defendant had adopted an identical or similar

mark such that consumers were likely to confuse the two." *Engineered Tax Servs.,*

*Inc. v. Scarpello Consulting, Inc.*, 958 F.3d 1323, 1327 (11th Cir. 2020); *Suntree*

*Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012) (emphasis

added) (citation modified) ("In order to prevail on federal claim of trademark

infringement *and* unfair competition, a trademark owner must show (1) that it had

trademark rights in the mark or name at issue and (2) that the other party had adopted

a mark or name that was the same, or confusingly similar to its mark, such that

consumers were likely to confuse the two.").[3] The Court now turns to the first

---

[3] Additionally, the type of federally registered mark at issue necessitates some discussion. TBSSM's mark is *not* on
the PTO's Principal Register. Instead, TBSSM only has a Federal Trademark Registration on the Supplemental
Register. *See* Dkt. 74-2; Dkt. 43-9. As discussed in further detail below, this distinction is crucial for determining the
burden of proof that each party bears on summary judgment. Setting that issue aside for now, there is an additional
question of whether a party can even bring a claim for trademark infringement under § 32(a), 15 U.S.C. § 1114(1),
when the federally registered mark is on the Supplemental Register. While the Eleventh Circuit has not directly
answered this question, district courts seem to accept that one can bring a supplementally registered trademark
infringement claim under 15 U.S.C. § 1114(1) or 15 U.S.C. § 1125(a). *See, e.g.*, *U.S. All Star Fed'n, Inc. v. Open
Cheer & Dance Championship Series, LLC*, No. 6:21-CV-2135-WWB-DCI, 2024 WL 4092868, at *2 (M.D. Fla. July
17, 2024) ("Section 32 of the Lanham Act creates a cause of action for infringement of a mark registered on either the

element of Plaintiff's declaratory judgment claims under § 32(a) and § 43(a), whether TBSSM had a valid trademark.

### b. Validity of TBSSM's Mark

The first question is whether TBSSM has a valid mark to satisfy the first prong of the non-infringement analysis. *See Dieter*, 880 F.2d at 326 (observing that a party must demonstrate a mark's validity before a likelihood of confusion analysis becomes necessary).

"Under the Lanham Act, federal trademark protection is available only to 'distinctive' marks—'marks that serve the purpose of identifying the source of . . . goods or services.'" *Royal Palm Props., LLC v. Pink Palm Props., LLC*, 950 F.3d 776, 782 (11th Cir. 2020) (emphasis omitted) (quoting *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357 (11th Cir. 2007)). There are two ways a mark can be distinctive: it can be "inherently" distinctive, or it can "acquire" its distinctiveness. *Id.* An "inherently" distinctive mark identifies the source of a product or service— "Coca-Cola" is an inherently distinctive mark of a single brand and producer. *Id.* On the other hand, a mark that has "acquired" distinctiveness "might initially have been

---

principal or supplemental registers."); *Otomix Inc. v. Greene*, No. 17-CV-80704, 2018 WL 1470868, at *2 (S.D. Fla. Jan. 26, 2018) ("Count I alleges that Defendant violated § 32 of the Lanham Act, while Count II alleges that Defendant violated § 43 Lanham Act. The analysis for both claims [concerning a trade dress mark on the Supplemental Register] is governed by the same principles"); *Colur World, LLC v. SmartHealth, Inc.*, No. CIV.09-00505, 2010 WL 299512, at *3 n.4 (E.D. Pa. Jan. 25, 2010) ("[C]ourts have recognized that the Act protects unregistered marks, i.e., common law marks, which include[] marks only registered on the Supplemental Register, under 15 U.S.C. § 1125(a)."); *Munro & Assocs., Inc. v. Huthwaite Grp., L.L.C.*, No. CIV. 05-72224, 2006 WL 1329155, at *7 (E.D. Mich. May 16, 2006) ("Defendants claim that because 'Lean Design' is registered on the Supplemental Register, Plaintiff may not bring a[] trademark infringement claim pursuant to 15 U.S.C. § 1114. This assertion is incorrect. . . . Trademarks registered on the Supplemental Register are protected under § 1114.").

understood to describe a broad class of potential products or services, but over time
it has taken on a 'secondary meaning' that links it to a particular source: 'California
Pizza Kitchen,' for example, may facially describe any random pizza eatery in the
Golden State, but the public has come to associate it with one brand in particular."
*Id.* at 783.

To separate the distinct marks from the non-distinct marks, the Eleventh
Circuit "classified marks into four categories, in descending order of strength: (1)
'fanciful' or 'arbitrary,' (2) 'suggestive,' (3) 'descriptive,' and (4)
'generic.'" *Engineered Tax Servs., Inc.*, 958 F.3d at 1327 (quoting *Royal Palm*, 950
F.3d at 783). In breaking down each category, the Eleventh Circuit has explained
that:

> [F]anciful marks (think "Verizon" telecommunications—the name is a
> made-up word), arbitrary marks (think "Apple" computers—the name
> is a real word that has nothing to do with the product)[,] and suggestive
> marks (think "Igloo" coolers—the name is a real word that bears only
> an oblique relationship to the product) [are all] "inherently" distinctive.
> *Cf.* [*Knights Armament Co. v. Optical Sys. Tech., Inc.*, 654 F.3d 1179,
> 1188 (11th Cir. 2011)]. For marks in these categories, no proof of
> secondary meaning is necessary. *Id.* By contrast, we consider
> descriptive marks (for example, an eyeglasses store called "Vision
> Center") and generic marks (a book-selling company called "Books")
> not to be inherently distinctive. *Id.* Descriptive marks can become
> protectible only if they "acquire" distinctiveness by obtaining a
> "secondary meaning," and generic marks can never become protectible.
> *Id.*

*Royal Palm*, 950 F.3d at 783. Put simply, fanciful, arbitrary, and suggestive marks
require no proof of secondary meaning and are entitled to trademark protection

because their intrinsic nature identifies a particular source of a product. *Id.*
Descriptive marks, on the other hand, describe the qualities or characteristics of a
good or service and are not inherently distinctive. *Id.* Even though descriptive marks
do not inherently identify a particular source, *see Two Pesos*, 505 U.S. at 769,
descriptive marks may nonetheless become protectible marks if they acquire
distinctiveness—i.e., secondary meaning. *Royal Palm*, 950 F.3d at 783.

When considering the validity of TBSSM's mark, the central issue here is "the
line separating suggestive from descriptive marks[,]" which "is also the line
separating marks with inherent distinctiveness from those without, that line—and
determining on which side [TBSSM's mark] falls—makes all the difference" for the
instant cross-motions for summary judgment.[4] *Engineered Tax Servs., Inc.*, 958 F.3d
at 1328. Because there is a "hazy border between suggestive and descriptive
marks[,]" the Court must make a detour and discuss the difference between a mark
on the Supplemental Register and a mark on the Principal Register, especially when
the difference dictates whether certain evidentiary presumptions apply on summary
judgment. *Id.*

An owner's registration on the Principal Register with the PTO establishes a
"rebuttable presumption that the mark[] [is] protectable or 'distinctive.'" *Welding*

---

[4] Indeed, TBSSM does not even argue that its supplemental mark is fanciful or arbitrary. Dkt. 81 at 10; Dkt. 95 at 20.
Nor could TBSSM make such an argument since its mark is only on the Supplemental Register. *See* 15 U.S.C. § 1091.

*Servs.*, 509 F.3d at 1357 n.3; 15 U.S.C. § 1057(b) (holding that registration of mark

on Principal Register is *prima facie* evidence of the mark's validity); 15 U.S.C. §

1115(a) (providing the same). Trademark holders are "never entitled to presumptions

of both 'inherent' and 'acquired' distinctiveness—they get only one or the other."

*Royal Palm*, 950 F.3d at 784 (emphasis omitted). The presumption in a particular

case depends on whether the PTO required the applicant to prove secondary meaning

during the registration process. *Engineered Tax Servs., Inc.*, 958 F.3d at 1326 (citing

*Royal Palm*, 950 F.3d at 784). When the PTO registers a mark without requiring the

applicant to present evidence of secondary meaning, the holder of the mark is

entitled to a presumption that its mark on the Principal Register is "inherently

distinctive and thus at least suggestive." *Id.* at 1328 (citing *Royal Palm*, 950 F.3d at

784). During the summary judgment stage, the "upshot" of this presumption is that

"in defending its mark's validity against [the defendants'] attack, [the plaintiff]

'ha[s] no burden to come forward with any affirmative evidence' that its mark [is]

inherently distinctive; 'to the contrary, [the defendants] ha[ve] the burden to prove

otherwise.'" *Id.* (quoting *Royal Palm*, 950 F.3d at 785).

However, it is undisputed that TBSSM only has the "TAMPA BAY SPINE &

SPORTS MEDICINE" mark registered on the Supplemental Register. *See* Dkt. 76 ¶

6; Dkt. 96 ¶ 6. A descriptive mark that is "capable of distinguishing an applicant's

goods or services" can be registered on the Supplemental Register. 15 U.S.C. §

1091(a); *see also In re Am. Fertility Soc'y*, 188 F.3d 1341, 1343 (Fed. Cir. 1999)

(finding a "mark may be registered on the supplemental register if it is capable of

distinguishing the applicant's goods or services," even though it has not yet acquired

distinctiveness); *In re Bush Bros. & Co.*, 884 F.2d 569, 570 (Fed. Cir. 1989) (citations

omitted) ("[A] mark that is ineligible for registration on the Principal Register

because it is 'merely descriptive' of the goods or services, may be registered on the

Supplemental Register."). The Supplemental Register "confers considerably fewer

advantages than principal registration." *In re Am. Fertility Society*, 188 F.3d at 1343.

Indeed, none of the evidentiary benefits or presumptions apply. *OpenAI, Inc. v. Open

A.I., Inc.*, 719 F. Supp. 3d 1033, 1046 (N.D. Cal. 2024), *aff'd*, No. 24-1963, 2024

WL 4763687 (9th Cir. Nov. 13, 2024); *see also* 15 U.S.C. § 1094 ("[B]ut applications

for and registrations on the supplemental register shall not be subject to or receive

the advantages of sections 1051(b), 1052(e), 1052(f), 1057(b), 1057(c), 1062(a),

1063 to 1068, inclusive, 1072, 1115 and 1124 of this title."). As such, "although a

mark registered on the [P]rincipal [R]egister enjoys a presumption of validity, a mark

registered on the [S]upplemental [R]egister—such as [TBSSM's mark] here—does

not." *U.S. All Star Fed'n, Inc. v. Open Cheer & Dance Championship Series, LLC*,

No. 6:21-CV-2135-WWB-DCI, 2024 WL 4092868, at *3 (M.D. Fla. July 17, 2024)

(citing *ERBE Elektromedizin GmbH v. Canady Tech.*, LLC, 629 F.3d 1278, 1288

(Fed. Cir. 2010)). Thus, Defendants enjoy no evidentiary benefit or presumption when resolving the cross-motions for summary judgment.

There is one more nuance to consider—Trasco is *not* the owner of the supplemental mark suing TBSSM for infringement; rather, Trasco (the Plaintiff) is suing TBSSM (the Defendant and owner of the supplemental mark) for declaratory judgment of non-infringement. *See* Dkt. 43. Because TBSSM does not enjoy the benefit of any presumption (due to only having a mark on the Supplemental Register), the Court must determine who bears the burden of proving the mark's validity on cross-motions for summary judgment when it is Plaintiff Trasco who seeks a declaratory judgment of non-infringement. While the Eleventh Circuit has not directly addressed this issue, caselaw from other district courts suggests that it is Defendants TBSSM and Dr. Nye who must bear the burden of proving their mark's validity on summary judgment.[5] *See MC3 Invs. LLC v. The Loc. Brand, Inc.*, No. 5:22-CV-260-MJF, 2024 WL 1896420, at *5 (N.D. Fla. Mar. 28, 2024) (quoting *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 194 (2014) ("In a declaratory judgment action, 'the burden of proving infringement' remains on the party who claims that its trademark was infringed."); *Now-Casting Econ., Ltd. v. Econ. Alchemy LLC*, 628 F. Supp. 3d 501, 515 (S.D.N.Y. 2022), *aff'd*, No. 23-947,

---

[5] This clarification is important since Defendants incorrectly argue that it is Plaintiff Trasco who bears the burden to disprove inherent distinctiveness. Dkt. 81 at 11; Dkt. 95 at 19. Defendant TBSSM presumably made this mistake since it believed it had a mark on the Principal Register, which would ordinarily entitle TBSSM to the aforementioned presumption and shift the burden of persuasion to Plaintiff Trasco. *See Engineered Tax Servs., Inc.*, 958 F.3d at 1328.

2024 WL 2720235 (2d Cir. May 28, 2024) (noting that in a declaratory judgment claim for non-infringement under § 43(a), it was the defendant who had the burden to establish it had a "valid mark in order to prevail in opposing [the plaintiff's] declaratory judgment claim" on summary judgment).

In other words, Plaintiff Trasco's assertions about the "TAMPA BAY SPINE & SPORTS MEDICINE" mark only being descriptive and lacking secondary meaning are thus better thought of as attacks on Defendant TBSSM's (hypothetical) trademark infringement claim, as if TBSSM had been a plaintiff bringing a suit against Trasco. *See Medtronic*, 571 U.S. at 194 (holding in a patent case for declaratory judgment of non-infringement, "the burden of persuasion is with the [defendant] patentee, just as it would be had the patentee brought an infringement suit [as a plaintiff].""). Ultimately, it is Defendant TBSSM that must establish that it has a valid (supplemental) mark to prevail in opposing Plaintiff Trasco's declaratory judgment claims.[6]

---

[6] There is one more layer of complexity to consider since there are cross-motions for summary judgment. The overall legal standard is the Rule 56(a) summary judgment standard. As such, when considering Plaintiff Trasco's motion for summary judgment, the Court must determine whether there is no genuine dispute of material fact that Defendant TBSSM has failed to carry its burden of showing it has a valid (supplemental) trademark. But when making that determination, the Court reviews the facts and all reasonable inferences in the light most favorable to Defendant TBSSM as the non-moving party. By the same token, when considering Defendant TBSSM's motion for summary judgment, the Court must determine whether there is no genuine dispute of material fact that Defendant TBSSM carried its burden of showing it has a valid (supplemental) trademark. But when making that determination, the Court reviews the facts and all reasonable inferences in the light most favorable to Plaintiff Trasco as the non-moving party.

i.  <u>Suggestive versus Descriptive</u>

With all this legal background in mind, the Court returns to the first prong of the non-infringement analysis—whether TBSSM's Supplemental mark is suggestive or merely descriptive. *Royal Palm*, 950 F.3d at 783. If TBSSM's mark falls on the descriptive side of the line, the Court then asks whether the "TAMPA BAY SPINE & SPORTS MEDICINE" mark has acquired secondary meaning (i.e., acquired distinctiveness). *See id.*[7] Beginning with whether TBSSM's mark is suggestive or descriptive, the Eleventh Circuit has outlined two legal tests—the "imagination test" and the "third-party-use test"—to distinguish between the categories.

Under the imagination test, a mark is "merely descriptive, rather than suggestive—and thus is not inherently distinctive—if 'the customer who observes the term can readily perceive the nature of plaintiff's services, without having to exercise his imagination.'" *Engineered Tax Servs., Inc.*, 958 F.3d at 1329 (emphasis omitted) (quoting *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1524 (11th Cir. 1991)). Under the third-party use test, the Court looks at "whether competitors would be likely to need the terms used in the trademark in describing their products." *Id.* at 1331 (quoting *Vision Ctr. v. Opticks, Inc.*, 596 F.2d 111, 116 (5th Cir. 1979)). It follows that if a competitor needs the mark to describe

---

[7] In many trademark cases, the first element is not in dispute, so courts skip the validity analysis and solely discuss the classification of the challenged mark in the context of the second element, likelihood of confusion. Here, because Plaintiff argues Defendants' (supplemental) registered mark is not entitled to protection, the Court discusses the classification of Defendants' mark and whether it has acquired secondary meaning.

its own product, the mark must not be distinctive. *Id.* (citing *Investacorp*, 931 F.2d at 1523).

Applying the foregoing tests, the Court concludes Defendant TBSSM has not carried its burden of showing its mark is suggestive, as opposed to merely descriptive. Relying on *Engineered Tax Servs., Inc. v. Scarpello Consulting, Inc.*, Defendants argue their mark is at least suggestive since Dr. Nye specifically chose the word "medicine" as it is a "commonly used as a noun with two well-known meanings[:] . . . (i) treatment for illness or injury or the study of the for[e]going, and . . . (ii) a substance such as a pill or liquid for the treatment of illness or injury[.]" Dkt. 95 at 19 (citing Dk. 80 ¶ 10). Therefore, "the two meanings of the noun 'medicine' which modifies and is modified by the word 'sports' would allow a reasonable jury to conclude TBSSM's mark is distinctive." *Id.*

But Defendants' reliance on *Engineered Tax Servs., Inc. v. Scarpello Consulting, Inc*. is misplaced. The Eleventh Circuit found the mark at issue to be suggestive as a whole, not because "engineer" has meaning both as a noun and a verb, but because "the term 'engineered' can be understood two ways, and that when combined with the phrase 'tax services' to form the mark, 'Engineered Tax Services' entails a clever double meaning, referring to tax services that are performed *both* (1) skillfully and scientifically *and* (2) by actual engineers." *Engineered Tax Servs., Inc*. 958 F.3d at 1329 (emphasis in original). Thus, the court found the mark to be

suggestive since the simultaneous double meaning required "a measure of imagination," and the connection between the mark and services provided was not "natural"—i.e., "tax services aren't the sort of thing that ordinarily calls for engineering." *Id.* at 1329–30.

Here, in contrast to the mark in *Engineered Tax Servs., Inc*., Defendants' articulation of why Dr. Nye chose the word "medicine" (which modifies "sports") cuts the other way against inherent distinctiveness. It is undisputed that "sports" is an undeniably descriptive term that is modified by the noun "medicine." Dkt. 95 at 19; Dkt. 98 at 3. But even when accepting (as the non-moving party) Defendants' two "definitions" of "medicine" as the ordinary meaning of the word, there is no evidence showing that the noun form of "medicine"—when fitted within the whole mark—is an "[un]natural pairing of words" which requires "a measure of imagination" for the meaning of the TBSSM mark to be apparent. *Engineered Tax Servs., Inc*. 958 F.3d at 1329, 1331. To the contrary, Dr. Nye seemingly concedes that the phrase "sports medicine" is a natural pairing of words and that the sole purpose of adding the word "medicine" was to better "describe" the services TBSSM provides to customers (without needing to use any imagination). *See* Dkt. 82 ¶ 16 (emphasis added) ("I included the word 'medicine' in the TBSSM business name and trademark to *describe* the physical treatments for patients and prescribed medication for patients offered by TBSSM."); *see also* Dkt. 80 ¶ 10 (emphasis

added) ("TBSSM included the word 'medicine' in the TBSSM business name and
trademark to *describe* both the physical treatments for patients and prescribed
medication for patients offered by TBSSM[,] which is more *descriptive*.").[8] As such,
even when construing the evidence in the light most favorable to Defendants, the
record shows Defendants used the word "medicine" in the "TAMPA BAY SPINE &
SPORTS MEDICINE" mark to ensure that a customer, who observes the name, "can
readily perceive the nature of [TBSSM's] services, without having to exercise his
imagination." *Engineered Tax Servs., Inc.*, 958 F.3d at 1329 (citation omitted).

Additionally, the court in *Engineered Tax Servs., Inc.* outlined two
hypothetical examples of a "natural pairing" of words: "an accounting firm that
performs cost segregation and calls itself 'Skillful Tax Services' and a biotech startup
that cultures genetically modified bacteria and calls itself 'Engineered Genes.' . . .
[T]he connections between product and mark are easy to draw because the
combinations are natural—unlike, we think, 'Engineered Tax Services,' the meaning
of which is not (or is certainly less) immediately apparent." 958 F.3d at 1329.

---

[8] More traditionally authoritative dictionaries reinforce this conclusion that the ordinary meanings of the word
"medicine" (as it modifies "sports") is a natural pairing that merely describes TBSSM's services. *See Medicine, N.*,
Oxford Eng. Dictionary, https://doi.org/10.1093/OED/6040711399 (last visited September 16, 2025) ("A substance or
preparation used in the treatment of illness; a drug; *esp.* one taken by mouth. Also: such substances generally.");
*Medicine, V.*, Oxford Eng. Dictionary, https://doi.org/10.1093/OED/5043861526 (last visited September 16, 2025)
("*transitive.* To treat or cure (a person, condition, etc.) by means of medicine; to give medicine to."); *Medicine, N.*,
Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/medicine (last visited September 16,
2025) ("a substance or preparation used in treating disease," "the science and art dealing with the maintenance of
health and the prevention, alleviation, or cure of disease," and "a substance (such as a drug or potion) used to treat
something other than disease").

Here, much like the hypothetical marks, the connection between TBSSM's services as a doctor's office that provides medical treatment to athletes and the portion of the mark at issue (i.e., "sports medicine") is easy to draw because the combinations are natural—if not blatantly obvious. Indeed, Defendants even *describe* one of their services as "sports medicine." *See* Dkt. 80 ¶ 16 (emphasis added) (listing the services TBSSM offers, including "chiropractic services, *sports medicine*, physical therapy, hormone therapy, joint injections, Interventional Pain Management, vitamin injections, Botox, and personal injury services[.]").

Next, when considering TBSSM's mark as a whole, including the geographical location of "Tampa Bay," the Court still cannot find that the mark is suggestive. Marks that invoke geographic identifiers, such as "Pennsylvania wheat, Kentucky hemp, Virginia tobacco, or Sea Island cotton," are not inherently distinctive. *Delaware & Hudson Canal Co. v. Clark*, 80 U.S. 311, 324 (1871) (citation modified); *see Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252, 255–56 (11th Cir. 2006) (affirming the district court's finding that "'Bavaro Palace' is merely descriptive. 'Bavaro' refers to a specific section of beach in the Punta Cana area of the Dominican Republic, and 'Palace' is a common industry term for a high-end hotel."); *Great S. Bank v. First S. Bank*, 625 So. 2d 463, 468–69 (Fla. 1993) ("[A] 'geographically descriptive term' is any noun or adjective that designates geographical location and would tend to be regarded by buyers as

25

descriptive of the geographic location of origin of the goods or services."). Defendants' use of the words "Tampa Bay" in their mark simply describes to the customer (without any imagination necessary) the geographical location where Defendants provide their "sports medicine" services. *See Pirate Water Taxi, LLC v. Tampa Water Taxi Co., LLC*, No. 8:22-CV-1878-KKM-MRM, 2023 WL 4551684, at *4 (M.D. Fla. July 14, 2023) (finding "'tampawatertaxico.com' is generic, or alternatively, descriptive.").[9] And, unlike the owner of the mark in *Engineered Tax Servs., Inc*., Defendants have neither articulated nor shown any evidence of an underlying "double meaning" within the "TAMPA BAY SPINE & SPORTS MEDICINE" mark that renders it suggestive, and thus inherently distinctive. 958 F.3d at 1331 (noting that for a customer to grasp the mark's "clever double meaning" simultaneously, it "requires . . . at least a measure of imagination. And that is sufficient"). Put simply, when reading the words "TAMPA BAY SPINE & SPORTS MEDICINE," it takes no exercise of imagination to readily perceive that the business's services involve providing medical treatment to athletes (in the Tampa Bay area) via a Doctor of Medicine.[10]

---

[9] Defendants even seemly acknowledge that the words "Tampa Bay" in a name can never be trademarked since "it's common knowledge that you don't get to claim the name Tampa Bay; otherwise, the [Tampa Bay] Buc[caneer]s would be suing the [Tampa Bay] Rays." Dkt. 81-2 at 32:8-20.

[10] Defendants present no argument on whether the use of the word "spine" in their mark somehow makes it suggestive. *See* Dkt. 95 at 19–20; Dkt. 81 at 10–11. Regardless, the Court would still arrive at the same conclusion, as the use of the word "spine" in the context of the entire mark simply denotes to the customer (again, without any imagination necessary) an area of the body where Defendants provide medical treatment.

Turning to the third-party use test, Defendants also fail to demonstrate that their mark falls under the suggestive category. There is evidence in the record that other businesses use the words "TAMPA," "TAMPA BAY," "SPINE," "SPORT," "SPORTS MEDICINE," and various combinations thereof in their names. Specifically, Plaintiff's answers to Defendants' First set of Interrogatories listed out twelve different businesses (all in Florida except one) that use some combination of the words in TBSSM's mark:

- Tampa Bay Joint and Spine
    - 26034 U[S] Highway 19 N, Clearwater, FL, 33763
    - First use on or before December 6, 2021
- Tampa Bay Orthopedic & Spine
    - 1811 N Belcher Rd., Clearwater, FL 33765
    - First use on or before December 6. 2021
- Spine Institute of Florida
    - 6536 Gunn Hwy., Tampa, FL 33625
    - First use on or before March 6, 2023
- Tampa Spine and Wellness
    - 205 W Dr Martin Luther King Jr Blvd #103, Tampa, FL 33603
    - First use on or before November 15, 2014
- North Tampa Spine & Joint Center
    - 17429 Bridge Hill Ct, Tampa, FL 33647
    - First use on or before January 6, 2011
- University Sports & Spine
    - 7163 University Blvd[,] Winter Park, FL 32792
    - First use on or before August 25, 2022
- Spine & Sport
    - 307 N Howard Ave[,] Tampa, FL 33606
    - First use on or before August 29, 2013
- South Florida Spine & Sports Specialists
    - 3000 SW 148th Ave Suite 115[,] Miramar, FL 33027
    - First use on or before January 22, 2017
- Spine & Sport Rehab Institute

- 286 S University Dr, Plantation, FL 33324
- First use on or before June 9, 2010
- Spine & Injury Associates
    - 1910 James L Redman Pkwy.[,] Plant City, FL 33563
    - First use on or before August 27, 2018
- Florida Spine Care
    - 6000 N Federal Hwy.[,] Fort Lauderdale, FL 33308
    - First use on or before June 8, 2013
- Spine & Sport Physical Therapy
    - 1213 N. Belt Hwy, Ste H[,] St Joseph, MO 64506
    - First use on or before July 9, 2017

Dkt. 74-4 at 44–45; *see also* Dkt. 94 at 8 (comprising the declaration of Dr. Nye showing Google search results, including "Tampa Bay Acu Health and Spine" acupuncturist).[11] This evidence shows that competitors—even within the same geographical location as Defendants—have made descriptive use of some or most of TBSSM's mark. In other words, this evidence indicates that competitors "would be likely to *need* the terms used in [TBSSM's] trademark in describing their" similar services—i.e., medical treatment to athletes in the Tampa Bay Area. *Vision Ctr.*, 596 F.2d at 116 (emphasis added). Importantly, Defendants have not rebutted this evidence by showing that the listed businesses are not competitors, as they are involved in a different industry or provide different services. *See Engineered Tax Servs., Inc.* 958 F.3d at 1331–32 (noting the two businesses using a similar name

---

[11] Even though it is not Plaintiff's burden to do so, Trasco also provided screenshots of 48 businesses in Florida that use some combination of "TAMPA," "TAMPA BAY," "SPINE," "SPORT," and "SPORTS MEDICINE." *See* Dkts. 78 ¶ 7, 78-7, 78-8. The Court, however, cannot consider this evidence on summary judgment. The Court struck these screenshots and the supporting affidavit for failure to comply with Federal Rule of Civil Procedure 26(a). *See* Dkt. 105 at 12–13.

were not competitors with the party who owned the "Engineered Tax Services" mark).

On this record, under both the imagination test and the third-party use test, Defendants have failed to show that their "TAMPA BAY SPINE & SPORTS MEDICINE" mark is suggestive, and thus inherently distinctive. Therefore, even after considering the facts in the light most favorable to Defendants as the non-moving party, the Court finds that there is no genuine dispute that the "TAMPA BAY SPINE & SPORTS MEDICINE" mark is (at most) only descriptive.[12]

### ii. Secondary Meaning Analysis

Because TBSSM's mark is merely descriptive, the Court now asks whether the "TAMPA BAY SPINE & SPORTS MEDICINE" mark has acquired secondary meaning (i.e., "acquired" distinctiveness). *See Royal Palm*, 950 F.3d at 783.

"A mark obtains a secondary meaning—and therefore acquires distinctiveness—when, in the minds of the relevant consuming public, the 'primary significance of the term . . . is not the product but the producer.'" *Id.* at 784 (quoting *Am. Television & Commc'ns Corp. v. Am. Commc'ns & Television, Inc.*, 810 F.2d 1546, 1549 (11th Cir. 1987)). So, in this case, Defendants have the heavy burden to prove that when the relevant consumers hear "TAMPA BAY SPINE & SPORTS

---

[12] Additionally, Defendants' mark only being on the Supplemental Register also cuts against any argument of inherent distinctiveness as "[a]n application for registration on the Supplemental Register is an *implied admission* that the term is not inherently distinctive." 2 McCarthy, *Trademarks and Unfair Competition*, § 19:43 (5th ed. 2025) (emphasis added) (citing *Otomix Inc. v. Greene*, 2018 WL 1470868, *3 (S.D. Fla. 2018)).

MEDICINE," they think of TBSSM as the "producer." This burden requires "a high degree of proof in establishing a secondary meaning," which "must be considered by the court when ruling on a motion of summary judgment." *Investacorp*, 931 F.2d at 1525.

Secondary meaning can be proven through "either direct evidence (like consumer surveys) or circumstantial evidence." *Royal Palm*, 950 F.3d at 783 (citing *Tartell v. S. Fla. Sinus & Allergy Ctr.*, 790 F.3d 1253, 1257 (11th Cir. 2015)). Neither Plaintiff nor Defendants have presented any consumer survey evidence; therefore, the Court considers the circumstantial evidence presented. *Investacorp*, 931 F.2d at 1525 ("[A]bsent consumer survey evidence, . . . four factors can be considered in determining whether a particular mark has acquired a secondary meaning[.]"). When evaluating secondary meaning based on circumstantial evidence, the Eleventh Circuit has outlined four factors for courts to consider:

> (1) the length and manner of the mark's use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the proprietor to promote a conscious connection in the public's mind between the mark and the proprietor's product or business; and (4) the extent to which the public actually identifies the mark with the proprietor's product or venture.

*Royal Palm*, 950 F.3d at 785 (citation modified) (quoting *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1513 (11th Cir. 1984)).

Critically, Defendants must prove their mark acquired secondary meaning *before* the alleged infringement began. *See Investacorp*, 931 F.2d at 1525

("[S]econdary meaning must attach to the mark before appellee first used the mark."); *see also Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 800 (11th Cir. 2003) ("Kids Golf must demonstrate that its mark acquired secondary meaning before TGC began to use its Drive Chip & Putt trademark on August 4, 1998."); 2 McCarthy, *Trademarks and Unfair Competition*, § 16:34 (5th ed. 2025) ("[T]he senior user [i.e., TBSSM] must prove the existence of a secondary meaning in its designation at the time and place that the junior user [i.e., Trasco] first began use of the accused mark.").

Before considering each *Conagra* factor in turn, the Court notes that Defendants have totally failed to carry their heavy burden of proving secondary meaning. Defendants' response to Plaintiff's motion for summary judgment fails to discuss a single *Conagra* factor or present any evidence showing that the factors weigh in their favor. *See* Dkt. 95 at 13–25. Instead, Defendants skipped straight to the "likelihood of confusion" analysis and its seven-factor balancing test. *Id.* at 13 (citing *FCOA LLC*, 57 F.4th at 947). But, as the Court discussed above, Defendants cannot bypass the validity prong and proceed directly to the likelihood of confusion analysis. *See Savannah*, 872 F.3d at 1262 (noting that "the first prong of an infringement analysis: the validity and scope of a contested mark" comes before the likelihood of confusion prong); *Dieter*, 880 F.2d at 326 (observing that a party must demonstrate a mark's validity before a likelihood of confusion analysis becomes

necessary). Regardless, the Court will still analyze the four *Conagra* factors to determine if "TAMPA BAY SPINE & SPORTS MEDICINE" has achieved secondary meaning.[13]

### 1. Length and Manner of the Mark's Use

For the first *Conagra* factor, the length and manner of the mark's use, it is undisputed that Defendants' first use of the "TAMPA BAY SPINE & SPORTS MEDICINE" mark was in August 2019. Dkt. 74-2; Dkt. 43-9. Because Plaintiff began using the name "TAMPA BAY SPINE AND SPORT" in March 2023, Dkt. 76 ¶ 12, Defendants had a three-and-a-half-year period to achieve secondary meaning. The Eleventh Circuit, however, has not outlined a fixed rule as to the length of time a mark must be in use before gaining secondary meaning and has even suggested the time "may be quite short." *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1084 (11th Cir. 2016) (citation omitted) (holding that a two-year period is sufficient to establish secondary meaning). What the Eleventh Circuit has made clear is that the manner of use during the time period can demonstrate whether secondary meaning has been achieved. *See id.*

---

[13] The Court notes that the "mere failure of the non-moving party to create a factual dispute does not automatically authorize the entry of summary judgment for the moving party." *Dixie Stevedores, Inc. v. Marinic Mar., Ltd.*, 778 F.2d 670, 673 (11th Cir. 1985). Instead, "Rule 56 requires the moving party to demonstrate the absence of a genuine issue of fact." *Id.* Here, the Court finds that Plaintiff has carried its initial Rule 56 burden of showing the absence of a genuine dispute of material fact regarding secondary meaning.

For example, in *FN Herstal SA v. Clyde Armory Inc.*, the court found that during the two years, there was "considerable evidence" that "the SCAR mark acquired secondary meaning" because "[d]uring that time, FN sold millions of dollars of SCAR rifles to the U.S. military through the [United States Special Operations Command ('USSOCOM')] contract, and because the USSOCOM solicitation garnered wide interest, FN received extensive media attention as the winner of the bid." *Id.* (citing *Maternally Yours v. Your Maternity Shop*, 234 F.2d 538, 544 (2d Cir. 1956)). Moreover, the evidence showed that the plaintiff "spent a substantial amount independently promoting its SCAR rifles at hundreds of trade shows, such as the February 2006 SHOT Show[,] where civilian consumers flocked to FN's booth to see the rifle." *Id.* Thus, the court found that the "evidence supports the district court's conclusion that the public associated the SCAR brand with FN at some point during those two years." *Id.*

Here, the only evidence Defendants have presented is that they used the "TAMPA BAY SPINE & SPORTS MEDICINE" mark for the last three years. Unlike the extensive manner of use in *FN Herstal*, Defendants fail to present any evidence that TBSSM's mark has gained widespread success or attention at either the national, state, or local level (within the Tampa Bay area). Nor have Defendants provided any testimony or records showing that they have spent substantial amounts of money promoting their mark at trade shows, medical conferences, or sporting conventions

over the last three years. At most, Defendant Dr. Nye stated that he had previously
sponsored athletic competitions, such as USPA events, golf tournaments, and
CrossFit, and participated in networking groups like BNI. Dkt. 80 ¶ 41; *see* Dkt. 78-
3 (showing screenshots of Defendants' website, which displays the "community
events" they have sponsored, dating back to 2013); Dkt. 81-2 at 38:2–41:25
(providing testimony from Dr. Nye about advertising at Little League softball and
baseball games, trade shows, health events, festivals, and on social media). But,
when asked if he had any records to substantiate his claims of sponsoring
tournaments or events with the TBSSM trademark, Dr. Nye admitted he could not
produce any documentation, but suggested anyone could search for them online
since "[t]his is a digital world." Dkt. 81-2 at 95:4–97:9; *see also id.* at 40:13–41:25
(showing Dr. Nye being questioned on whether he has "produced anything to prove"
all the promotions and advertisements he did, and conceding "No, I haven't, but I
can").

On the other hand, there is undisputed evidence showing that Defendants used
their mark only on the front doors of their single location, inside their office, and on
their website. Dkt. 82-8 (showing front entrance of Defendants' medical office); Dkt.
74-6 (showing interior of Defendants' medical office); Dkts. 78-3, 78-4 (showing
Defendants' website). This manner of use, however, falls well short of what is
required to achieve secondary meaning. *See Investacorp*, 931 F.2d at 1525 ("[T]here

is nothing significant about the manner of appellant's use of the mark, other than appellant merely 'displayed its service mark on nearly all of its transactional documents.'"); *Maternally Yours*, 234 F.2d at 544 (noting that the fact that the plaintiff's "marked success . . . produced widespread and unusual recognition of its name and operation in the national press by the time defendant entered the field" supported the existence of secondary meaning in a short period of time). Defendants fail to satisfy the first *Conagra* factor for distinctiveness through secondary meaning.

### 2. Nature and Extent of TBSSM's Advertising and Promotion

Next, for the advertising and promotion factor, "the question is not the extent of the promotional efforts, but their effectiveness in altering the meaning of [the word] to the consuming public." *FN Herstal SA*, 838 F.3d at 1085 (11th Cir. 2016) (quoting *Aloe Creme Labs., Inc. v. Milsan, Inc.*, 423 F.2d 845, 850 (5th Cir. 1970)).

Here, Plaintiff argues that TBSSM "produced very little evidence of its advertising efforts and no evidence of its advertising expenditures[,]" even though "such evidence was specifically requested by Plaintiff in its discovery requests." Dkt. 74 at 8 (citing Dkt. 74-5). The Court agrees. Out of the hundreds of documents produced by Defendants, Plaintiff correctly notes that there are only a handful that provide any support for TBSSM's advertising and promotion efforts. *Id.* (citing Dkt. 74-6). These photos and screenshots show that Defendants only used their mark on the front door of their medical office, on some interior posters within the office, and

on their website. *See* Dkt. 74-6. Dr. Nye further admitted that he never even used the name "TAMPA BAY SPINE AND SPORT" on business cards, print media, or digital media. Dkt. 81-2 at 31:1-20. The evidence is woefully inadequate in demonstrating that Defendants have "altered the meaning of [the 'TAMPA BAY SPINE & SPORTS MEDICINE'] to the consuming public." *FN Herstal SA*, 838 F.3d at 1085.

Moreover, even when accepting (as the non-moving party) Dr. Nye's testimony that TBSSM sponsored athletic competitions, such as USPA events, golf tournaments, and CrossFit, and participated in networking groups like BNI, Dkt. 80 ¶ 41, there is still no evidence in the record regarding the amount of money Dr. Nye spent on these sponsorships and whether such advertisements at sporting events made "inroads [in]to the consumer psyche." *Investacorp*, 931 F.2d at 1525–26 ("[A]ppellant's advertising expenditures did not exceed one-hundred dollars per month. Although, appellant emphasizes that they had expansive growth and showed a high ratio of sales dollars to advertising dollars during the relevant period, this fact does not indicate that appellant's bantam advertising campaigns made major inroads to the consumer psyche."); *FN Herstal SA*, 838 F.3d at 1085 ("The attention FN received after winning the USSOCOM contract increased public awareness of FN's SCAR rifle. Then, FN began spending a substantial amount in 2005 and 2006 advertising its SCAR rifles and distributing SCAR brochures, flyers, T-shirts, hats, and other promotional items bearing the SCAR mark."); *Vital Pharms., Inc. v.*

*Monster Energy Co.*, 472 F. Supp. 3d 1237 (S.D. Fla. 2020) (holding that a Plaintiff could survive summary judgment based on evidence of a $1.7 million advertising campaign and wide social media reach). Even viewing the facts in the light most favorable to Defendants, the meager evidence of TBSSM's advertising and promotion weighs against a finding of secondary meaning.

### 3. The TBSSM's Effort to Promote a Conscious Connection Between the Mark and the Business

As to the third *Conagra* factor, for much of the same reasons discussed above in factor two, Defendants fail to show there is a conscious connection between the "TAMPA BAY SPINE & SPORTS MEDICINE" mark and their business. *See Royal Palm*, 950 F.3d at 786 ("Royal Palm Properties presented evidence pertaining to both the second and third *Conagra* factors[.] . . . In particular, Royal Palm Properties touted its $1.6 million marketing campaign—a steady stream of mailers, brochures, magazines, and events—which, it explained, it has used to 'ensure[] that it remains the known, prominent broker for the parcels' in Royal Palm Yacht & Country Club.").

Furthermore, courts can also consider the percentage of market share a business holds to determine if there is a conscious connection between the mark and the producer. *See La Potencia, LLC v. Chandler*, 733 F. Supp. 3d 1238, 1262 (S.D. Fla. 2024) (noting the "Chandler Bats has consistently been one of the top five bat manufacturers in terms of market share to MLB players for several years, holding

approximately 11% of the market share of MLB players[,] . . . [which shows] the owners of the mark have expended considerable effort in establishing a connection between the Chandler Bats name and the bat business—and the relevant consuming public identifies the name Chandler Bats."); *Conn. Cmty. Bank v. The Bank of Greenwich*, 578 F. Supp. 2d 405, 414–15 (D. Conn. 2008). Again, Defendants have failed to provide any evidence showing TBSSM owns any market share of the sports medicine business in the Tampa Bay area. At most, Dr. Nye could only state that TBSSM is profitable. Dkt. 81-2 at 76:13–78:6.

Along the same vein, the Eleventh Circuit has noted that the intentional copying of a mark can be evidence of secondary meaning when the copying party is trying "to take advantage of the popularity of [the] mark on the market." *FN Herstal SA*, 838 F.3d at 1086 (citation omitted) (noting intentional copying evidence helps to prove a secondary meaning when "[c]onsiderable evidence in the record supports the finding that Clyde Armory adopted the mark to take advantage of the popularity of FN's mark on the market. . . . Clyde Armory's former Chief Operating Officer testified that Clyde adopted the SCAR-Stock mark in part to profit from the popularity of FN's mark. . . . Clyde Armory even laser-engraved its stocks with the mark SCAR-CQB-Stock in the same font, color, and size as the SCAR mark on FN's rifles.").

In this case, there is no evidence of any intentional copying by Trasco, as it is undisputed that the parties' respective logos differ in font, color, and size. Dkt. 76 ¶ 38; Dkt. 96 ¶ 38. Nor is there any evidence that Defendants' mark was so popular within the Tampa Bay market that Trasco intentionally copied Defendants' mark to take advantage of its popularity with customers. As such, because there is little evidence that Defendants have expended considerable effort in establishing a conscious connection between the mark and their sports medicine business, this factor weighs against finding that the relevant consuming public identifies the name "TAMPA BAY SPINE & SPORTS MEDICINE" with Defendants' business.

    4.  Extent to which the Public Actually Identifies the Mark with TBSSM's Venture

Finally, as to the last *Conagra* factor, the Court finds that this factor also weighs against a finding of secondary meaning. As discussed above, survey evidence can be direct evidence that the public actually identifies the mark with TBSSM, *Royal Palm*, 950 F.3d at 783, but Defendants have presented no surveys or other quantitative evidence to satisfy their burden. It is also undisputed that neither party has any expert witness testimony that can opine about whether Defendants have achieved a reasonable level of brand name awareness or identity among residents of the Tampa Bay area, or whether TBSSM enjoys a positive reputation in the community. Dkt. 76 ¶ 36; Dkt. 96 ¶ 36; *see also Popular Bank of Fla. v. Banco Popular de P.R.*, 9 F. Supp. 2d 1347, 1358 (S.D. Fla. 1998) ("Plaintiff also presented

expert testimony. . . . who reviewed the advertising, promotion, signage, and other expenditures. Based on [the expert's] review of those materials, and his extensive knowledge and experience in the field, he concluded that plaintiff has achieved a 'reasonable level of brand name awareness or identity among residents of South Florida, especially among the Hispanic community.' He opined that Popular Bank enjoys a positive reputation and has 'over the years . . . capitalized on its name, reputation[,] and services to the South Florida community.'").

Nevertheless, Defendants contend that their mark has achieved secondary meaning, as "TBSSM has received over 900 pages of subpoenas and materials for patients belonging to Trasco" via fax and mail. Dkt. 95 at 14; *see also* Dkts. 82-3, 82-4, 82-5, 82-6, and 82-7 (showing copies of the subpoenas sent to Defendants). Defendants are correct that "evidence of actual confusion . . . can constitute direct evidence of secondary meaning." *La Potencia*, 733 F. Supp. 3d at 1263; *see Investacorp*, 931 F.2d at 1526 ("[I]nstances of consumer confusion are probative of secondary meaning[.]"). However, the Eleventh Circuit has emphasized that evidence of secondary meaning must come *before* an alleged infringer's use of the mark. *See Investacorp*, 931 F.2d at 1525; *Gift of Learning Found.*, 329 F.3d at 800; 2 McCarthy, *Trademarks and Unfair Competition*, § 16:34 (5th ed. 2025).

Here, none of the subpoena evidence creates a genuine issue of material fact. Dr. Nye admitted that he has "never gotten a single subpoena for a client that wasn't

mine . . . until September of '23" when Plaintiff first moved into its new Palm Harbor location and began using the "TAMPA BAY SPINE AND SPORT" name. Dkt. 81-2 at 101:19–102:18. As such, the subpoenas are irrelevant when attempting to prove secondary meaning because the subpoenas only began to arrive in September 2023, *after* Plaintiff's first use date of the name "TAMPA BAY SPINE AND SPORT" on March 1, 2023. Dkt. 76 ¶ 12; *see Tarsus Connect, LLC v. Cvent, Inc.*, 452 F. Supp. 3d 1334, 1361 (N.D. Ga. 2020) (emphasis omitted) ("All of Tarsus' evidence concerns events that occurred after January 22, 2015—the date Tarsus alleges the infringement began. . . . Since this evidence concerns events after Tarsus alleges the trademark infringement began, it cannot create an issue of fact on secondary meaning."); *Gift of Learning Found.*, 329 F.3d at 800.

At bottom, after considering all the *Conagra* factors, Defendants have failed to present evidence that creates a material issue of fact. Indeed, the Court finds that the undisputed evidence (and the absence of evidence) weighs against a finding that Defendants' mark has achieved secondary meaning in the three years before Plaintiff's alleged infringement. Therefore, Defendants have failed to meet their burden of proof in demonstrating that their mark has acquired secondary meaning and is deserving of protection.

### c. Florida Common Law Claim in Count III

As for the Plaintiff's Florida common law claim, the Court can quickly resolve this count in Plaintiff's favor. As discussed at the beginning of this Order, "Florida trademark infringement claim . . . and its common law infringement and unfair competition claim . . . rise or fall with its federal trademark infringement and unfair competition claims." *Fla. Int'l Univ. Bd. of Trs.*, 830 F.3d at 1267; *Suntree Techs.*, 693 F.3d at 1345 ("Suntree contends that the district court erroneously concluded that the legal analysis is the same for all three counts in Suntree's complaint: violations of the Lanham Act, FDUPTA, and Florida state common law for infringement and unfair competition. We disagree."); *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition."). For the above reasons, Plaintiff is also entitled to summary judgment on its claim in Count III.

### d. Statutory Damages and Trademark Cancellation

The Court also addressed two other issues: Plaintiff's request for attorney's fees pursuant to 15 U.S.C. §1117(a) and cancellation of TBSSM's Federal Trademark on the Supplemental Register. *See* Dkt. 74 at 24–25.

The Lanham Act allows a prevailing trademark owner to recover the infringer's profits. 15 U.S.C. § 1117(a). "In assessing profits[,] the plaintiff shall be

required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id.* "The Act confers upon the district court a wide scope of discretion to determine the proper relief due an injured party." *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1170 (11th Cir. 2019) (quoting *Burger King Corp. v. Mason*, 855 F.2d 779, 781 (11th Cir. 1988)). "An accounting of a defendant's profits is appropriate where: (1) the defendant's conduct was willful and deliberate, (2) the defendant was unjustly enriched, or (3) it is necessary to deter future conduct." *Id.* (citing *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1521 (11th Cir. 1990)). "Conduct is willful if the infringer was 'knowingly and deliberately cashing in upon the goodwill of [the infringed].'" *Id.* (quoting *Burger King*, 855 F.2d at 781).

Here, the Court denies Plaintiff's request for damages and attorneys' fees under 15 U.S.C. §1117(a). First, Trasco overlooks that it is the party suing for a declaratory judgment of *non-infringement* against another party (i.e., TBSSM), who does have a mark registered with the PTO. Trasco is not suing for any violation of the Lanham Act that TBSSM committed; rather, Trasco is suing for a declaration that *it* has not violated the Lanham Act. As such, the Court is doubtful that Trasco qualifies as a party entitled to damages under 15 U.S.C. § 1117(a). *See* 15 U.S.C. §1117(a) (emphasis added) ("When a *violation* of any right of the registrant of a mark registered in the Patent and Trademark Office, a *violation* under section

1125(a) or (d) of this title, or a *willful violation* under section 1125(c) of this title,
shall have been established in any civil action arising under this chapter . . .”).
Second, even if Trasco was entitled to damages as the prevailing party under 15
U.S.C. §1117(a), Plaintiff has presented no evidence on any of the three elements
required to receive the opposing party's profits. Third, Plaintiff has not presented
any evidence, made any argument, or cited any authority showing that this is an
“exceptional case” that entitles Plaintiff to reasonable attorney fees under 15 U.S.C.
§1117(a).

As to the cancellation of TBSSM's Federal Trademark Registration on the
Supplemental Register for “TAMPA BAY SPINE & SPORTS MEDICINE,”
registered on June 25, 2024 (Dkt. 74-2; Dkt. 43-9), the Court grants Plaintiff's
request.

District courts have discretion to order the cancellation of a federal trademark
registration in whole or in part. *See* 15 U.S.C. § 1119. As such, a court “can cancel a
registered mark under § 1119 if the challenger to the registration demonstrates: ‘(1)
that it has standing to petition for cancellation because it is likely to be damaged,
and (2) that there are valid grounds for discontinuing registration.’” *Pinnacle Advert.
& Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989, 1004 (11th
Cir. 2021) (quoting *Royal Palm*, 950 F.3d at 782). When, as is the case here, the mark
at issue has been registered for less than five years, the “valid grounds for

discontinuing registration include any reason for which the registration should have been barred in the first instance." *Royal Palm*, 950 F.3d at 782 (citation modified). "One such ground is that the mark lacks distinctiveness." *Pinnacle Advert. & Mktg. Grp.*, 7 F.4th at 1004.  "A determination of distinctiveness, therefore, is key to [this] [C]ourt's determination of whether [TBSSM's] registration[] should be cancelled under § 1119." *Id.*

Here, the Court finds that Trasco has standing to sue for the cancellation of TBSSM's mark. As the Eleventh Circuit notes, "as a general matter, the Lanham Act sets a low statutory-standing bar: The requirement for standing to pursue a trademark-cancellation claim is fairly easy to satisfy in the vast majority of cases." *Royal Palm*, 950 F.3d at 788 (citation modified). It is clear that Trasco has the requisite direct, personal interest in the outcome of this litigation. If the "TAMPA BAY SPINE & SPORTS MEDICINE" trademark were cancelled, Trasco would be free to use the mark in its promotional materials, without fear of a lawsuit. *See id.* ("Pink Palm Properties has the requisite direct, personal interest in the outcome of this litigation. Were the 'Royal Palm Properties' trademark cancelled, Pink Palm Properties would be free to use the mark in its promotional materials, without fear of another lawsuit."). Indeed, that is why Trasco sued in the first place, seeking a declaratory judgment of non-infringement after receiving cease-and-desist letters from TBSSM. Dkt. 76 ¶ 19.

45

Next, the Court has already found there are valid grounds for discontinuing registration due to a lack of inherent or acquired distinctiveness. Plaintiff, however, goes even further and argues that the "TAMPA BAY SPINE & SPORTS MEDICINE" is generic. Dkt. 74 at 24. The Court agrees.

As discussed above, "[d]escriptive terms may not be registered as trademarks under the Lanham Act, unless the holder shows that the mark has acquired 'secondary meaning.'" *Dieter*, 880 F.2d at 328 (citing 15 U.S.C. § 1052(e)(1), (f)). On the other hand, "generic use of a word may not be registered as a trademark." *Welding Servs.*, 509 F.3d at 1358 (citing *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985)). "[A] generic name refers to a particular genus or class of which an individual article or service is but a member." *Id.* (citation modified). "[O]ther courts say a generic name depicts the product or service as a whole, rather than any particular feature, quality, or characteristic of the whole." *Id.* (citation omitted). Importantly, "[c]ourts have generally held that a term used generically cannot be appropriated from the public domain; therefore, even if the name becomes in some degree associated with the source, a generic mark cannot achieve true secondary meaning." *Id.* (citation omitted).

Here, incorporating the Court's extensive discussion on why Defendants' mark lacks (inherent and acquired) distinctiveness and why it lacks secondary meaning, the Court also finds that Defendants' mark is generic because the name

refers to a class of services (i.e., "spine & sports medicine") of which its (medical) services are but a member. In other words, "TAMPA BAY SPINE & SPORTS MEDICINE" generically indicates a class of spinal medicine and sports medicine that is located in Tampa Bay. As such, the Court can only conclude that TBSSM's use of words is generic, as it has used "Spine & Sports Medicine" to denote both what it does and what TBSSM does for customers. *See id.* at 1359 (finding that "[the plaintiff] Welding Services has used 'welding services' to denote both what it does and what Welding Technologies does for customers; we can only conclude that its use of these words is generic."). Therefore, because Defendants' mark is generic, the Court cancels the "TAMPA BAY SPINE & SPORTS MEDICINE" mark on the Supplemental Register. Pursuant to 15 U.S.C. § 1119, the PTO is hereby directed to cancel Defendants' mark, serial number 98185607, registration number 7430833.

In sum, because Defendants do not have protectable trademark rights in "TAMPA BAY SPINE & SPORTS MEDICINE," the Court grants Plaintiffs' motion for summary judgment on its claims for declaratory judgment of non-infringement under §§ 32(a), 43(a) of the Lanham Act (Count I), declaratory judgment of no unfair competition under 15 U.S.C. § 1125(a) (Count II), declaratory judgment of non-infringement under Florida Common Law (Count III), and declaratory judgment of invalidity based on descriptiveness, genericness, and extensive third-party use (Counts IV, V, and VI).

## II.    Defendants' Motion for Summary Judgment

In Defendants' motion for summary judgment, Defendants exclusively focus on the "likelihood of confusion" prong and its seven-factor balancing test. *See* Dkt. 81 at 6–16 (citing *FCOA LLC*, 57 F.4th at 947). However, as the Court has previously explained, Defendants cannot skip past the validity prong. *See Savannah*, 872 F.3d at 1262; *Dieter*, 880 F.2d at 326. Here, "[b]ecause there was no protectable interest in the ['TAMPA BAY SPINE & SPORTS MEDICINE'] mark, the consumer confusion analysis [is] immaterial." *Bavaro Palace*, 203 F. App'x at 256; *see also Gift of Learning Found.,* 329 F.3d at 801–02 ("The confusion that plaintiff claims exists is irrelevant unless the mark is protectible in the first instance. . . . Accordingly, there is no need to engage in an analysis of likelihood of confusion between the two marks."). Defendants' motion for summary judgment is denied.

### CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1.  Plaintiff Trasco's Motion for Summary Judgment, Dkt. 74, is **GRANTED.**

2.  Defendants TBSSM and Dr. Nye's motion for summary judgment, Dkt. 81, is **DENIED.**

3.  Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, the Clerk is **DIRECTED** to enter a declaratory judgment in favor of Plaintiff Trasco stating the following:

a. Plaintiff has not infringed and is not infringing, either directly or indirectly, any valid and enforceable trademark rights of Defendants under §§ 32(a), 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1)(a), 1125(a);

b. Plaintiff has not engaged in and is not engaging in unfair competition in violation of 15 U.S.C. § 1125(a);

c. Plaintiff has not committed and is not committing any trademark infringement or unfair competition under Florida common law; and

d. The Court declares the "TAMPA BAY SPINE & SPORTS MEDICINE" name is being used by third parties throughout the state of Florida and constitutes extensive third-party use.

4. Pursuant to 15 U.S.C. § 1119, the United States Patent and Trademark Office is hereby **DIRECTED** to cancel Defendants' mark, serial number 98185607, registration number 7430833. The Clerk shall **CERTIFY** this decision to the Director of the United States Patent and Trademark Office for entry on the records of the Patent and Trademark Office.

5. The Clerk is also directed to **TERMINATE** all pending motions and deadlines and **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida, on October 2, 2025.

*/s/ William F. Jung*
**WILLIAM F. JUNG**

49

**UNITED STATES DISTRICT JUDGE**

**<u>Copies Provided To</u>**
Counsels of Record